All rise. Hear, ye, hear, ye, hear, ye. The United States Court of Appeals for the Venice Circus now opens its door. Please be seated. Good morning. Our last day of oral argument, and I only have two appeals to hear this morning. Counsel, we're familiar with your cases. We've read your briefs, the authority cited in your briefs. You can get straight to the heart of your argument in the limited time that you have. We're probably going to have some questions, but be mindful of our traffic lights. And when the red light shines, it's time for you to wrap it up. If you're answering a question from the court, you can, of course, be on our time to finish your answer. But and you won't lose any rebuttal, but be mindful of our time. We're going to start this morning with United States v. Thomas. Ms. Salant, is that right? Thank you. Good morning. May it please the court, counsel. My name is Megan Salant, and I represent John Thomas in this appeal. Last week, the court asked the parties to address the question of whether Officer Kaiser had probable cause to believe Mr. Thomas knowingly possessed a counterfeit identification under the Florida statute. This issue raised by the court was forfeited by the government and never considered by the district court. Yeah, see, I don't think that's right. OK. You know, it may be that the government didn't cite that particular statute, but the government clearly preserved the argument that there was probable cause to believe that your client had violated the law. We have to figure out what law that might have been. It seemed to me like the district court thought that the law that might have been violated or for which there might have been probable cause was the possession of a fake I.D. And when I look at the Florida law, this statute just jumps out at me. So let's assume that that isn't forfeited.  I mean, this is really an argument in support of the issue that has been preserved. That's my view. At least I can only speak for myself. So I so the assuming if if we're going to rely on that probable cause, the probable cause that he had possession of this counterfeit identification, that probable cause didn't come to light until 15 minutes into what we would call an illegal detention. And so I would argue that there was an illegal detention because when he approaches the vehicle to to ascertain about the littering situation, which he admits your client admits that he did do, he did litter. No, I'm sorry. He did not admit that he I think my client admitted that he placed garbage on the ground. But the conversation is relayed by my client was that he advised the officer Kaiser when officer Kaiser approached that he was in the process of cleaning out his car and hadn't yet gotten rid of the garbage. Well, he had placed litter on the ground and that was correct, but he hadn't abandoned it. OK. All right. Well, but there was litter on the ground that and that's why the officer had approached him. And then he asked him for a form of identification. And then your client proceeded to give him this form of identification. Correct. And then the officer called in to ascertain if this was a proper identification. He also called in the license plate of the vehicle to see if it matched the driver's license that was given. And that took some time. Well, so the officer called in the license plate and my client's identification within two minutes of stopping him. But he did not. The officer did not get any confirmation back from dispatch that there was anything wrong with with the tag. The license plate was never there was never any confirmation that there was anything wrong, according to dispatch, according to what we could hear, which we couldn't hear anything except for the conversation between officer Kaiser and dispatch. There was never any confirmation that the tag on the car was was not valid. But there but then also there was the conversation about the I.D. being invalid or counterfeit didn't come about until 15 minutes after the police officer had already stopped him. Of course, he already had noticed that the birthday. We don't we actually don't know that that's what happens at 15 minutes is that that is when the officer asks about the actually the question about the birthday. I said something that he already knows about and has already noticed. Right. Well, we don't know that. Well, how else did he. Why else would he have said anything about. No, I'm saying that's correct. But I'm saying he clearly didn't have from the start when he looked at the license. I don't think it is clear from the record that he knew that when he first looked at the license. When else did he when else would he have known it? I mean, he when he brings it up, let's say it is 15 minutes into it. OK, he says, you know, 19 is a 1947 birthday or something like that. He says that. Sure. Because he has earlier seen the I.D. Well, the first thing he does after in this 15 minutes in is or asks dispatch, have you gotten any results back on that? First of all, there's a lot of intervening in between because the girlfriend comes in. Correct. OK, correct. And he gets her identification also. And the dispatch is unable to find her either in the Florida or Louisiana database as well. OK. And initially the dispatch was also unable to verify the tag that belongs to the vehicle. So what you said before was not accurate. Well, the dispatch, all the dispatch said was that is not usually because it was a temporary tag. And all the dispatch said was usually temporary tags don't last that long. That is all the dispatch said. And that was at 1550. If you go by the number on the bottom of the screen, the actual time of the video, the dispatch just says usually they don't last that long. The dispatcher eventually did match, locate a match for the accurate plate and provided the owner's name. And that did not correspond to the license that Thomas gave. Oh, the identification. I'm sorry. Right. I'm sorry. I thought you were referring to the tag on the car. So the first the first thing that happens is the when he first calls in the I.D. at 1824, dispatch actually says, yes, that is a valid I.D. And then it goes on from there. They don't at that moment, they don't discuss any of the specifics. And then it's 15 minutes later that the officer asks the dispatch operator, the other dispatch, excuse me, dispatch operator, if she has if they found any more information. And that's when she says, well, let me get you back to the other operator. And it goes on from there. I would like to just clarify what what we are arguing. And it is that the the district court found that the initial detention was legal, that it was a detention from the beginning. And the district court based that on Spork. And it's entirely clear to me that that's right. I mean, I mean, we want we can watch the video. The officer has a littering complaint, approaches the car and your client gets out to pick up the trash and gets back in. Correct. As for the I.D., which is a consensual encounter, it seems to me, I mean, he hasn't been detained. In fact, your client eventually gets out of the car and walks around. Right. He does do that. I don't know that. I don't see where in any of that there's a detention. Well, we don't know, for instance, whether or not the officer kept his I.D., which under Knights is one of the one of the. Wouldn't you be required to show that if I mean, if you're saying that he was detained? I think that that's a matter of fact, that we that we can't tell just from the video. And would you have to if I mean, if your contention is that he was detained because the officer kept the I.D., then wouldn't you have had to do some evidence that he was that he kept the I.D.? Well, initially, I would say no. I mean, the district court found he was detained. Suppress the evidence. Correct. Correct. And on the on the ground that it was an illegal detention from your contention is that that the that what made it an illegal detention is that the officer kept the I.D. Where's your evidence for that? Well, I think that in order to have to fight to get to that, we would have to go back and have an evidentiary hearing, which we never were given at the get go. I think that. Based on the evidence that that was before the district court, the district court found that it was a detention from the beginning because the district court believed that Mr. Thomas, I'm sorry, the district court believed that the officer had reasonable suspicion to conduct the stop. But as I've said, Mr. Thomas maintains that that there wasn't reasonable suspicion that he was littering. And even if there was that reasonable suspicion under Royer has to be limited. The investigation into that reasonable suspicion has to be limited to what the officer to to. I can look at the facts that the district court relies upon to support its conclusion that there was a detention and disagree that those facts support a conclusion that it's a detention. I am aware that you can do that. I just believe that there aren't enough facts in the district court order to make those findings. And so I would ask for an evidentiary hearing on the issue. Well, the problem is, it's your burden to show that. Yeah, I mean, you could have supplied an affidavit from your client, couldn't you? He didn't return my my. He got my driver's license. Sure, we absolutely could have done that. All right. If it's OK, I'd like to reserve the rest of my time for rebuttal. Thank you. Absolutely. Miss Costa. Good morning, Your Honors. Winifred Acosta representing the appellee, the United States. May it please the court. Your Honor, I'll start with the question raised by the court prior to today. It's the government's position that this court may affirm the district court's denial of the motion to suppress for any grounds supported by the record. We do believe that there was probably a case law that says even if you cite the wrong law and even if the warrant cites the wrong law, if nevertheless there was probable cause to believe that a violation of the law occurred, we can we can we can look to what the law is. That's right. Yes, Your Honor. I am mystified why y'all missed this statute. Yes, Your Honor. Totally mystified by it. It's so it's so it's so clear. Yes. Yes, Your Honor. And we believe that there was a clear violation of Florida Statute 322-2121A. Possession of a fraudulent driver's license. Do you agree that's the best law to be looking for? Absolutely. Absolutely. Yes, Your Honor. I did look at other statutes, criminal use of personal identity, identifying information and resisting without violence. But this one here was definitely right on point. And we believe that there was probable cause for an arrest on that basis. Your Honor, the government believes that to support a violation under that statute, Mr. Thomas provided a fraudulent driver's license. This driver's license had his picture depicted. It had the name and date of birth of Mr. Dameron. The date of birth was a 1947 date of birth. And it had a driver's license number, which came back to a second victim. And the officer, Mr. Thomas was in his mid 40s. He was born in 1980. So when the officer received the driver's license, observed it, it was apparent that he was not in his 70s. Which with the date of birth, he would have been in his 70s. So clearly looking at the face of the driver's license, it was fraudulent. On top of the fact that the officer had already learned through dispatch that nothing had came back from the information provided by the female occupant. Was there ever even a suggestion in the district court that the officer had kept the ID? No, Your Honor. I did not see that any place in the record. Did not see that, Your Honor. Furthermore, I had neither. I was just wondering. Yes, Your Honor. So really, the only thing that was accurate on the driver's license was Mr. Thomas's picture. However, everything else was fabricated. And we know from state law, Cox, I'm going to spell this because I'm going to mispronounce it. It's K-O-C-Z-W-A-R-A, Cox-Zara. That case clearly indicates that complete fabrication is not necessary for a violation under this statute. So there was enough fabricated information for there to have been a violation under the statute. So with that, not only was there reasonable suspicion of criminal activity, but there was at the point that Officer Kaiser opened the door and asked Thomas to get out of the vehicle, there was probable cause for a violation under the statute. The dispatch had also advised the officer that they could provide a picture, a picture of the real person that the driver's license number came back to. The dispatch asked whether or not the officer had access to his email. So the officer knew that the victim was, in fact, a real person, in addition to the fact that the information was fraudulent. So, Your Honor, all in all, our position is we believe that there was initially a consensual encounter, and from that consensual encounter, Officer Kaiser developed reasonable suspicion of criminal activity, which, in fact, led to probable cause for an arrest. So under those grounds, we believe that the district court's denial of the motion to suppress should be affirmed. We also believe that the district court was correct in its conclusion that the officer had the authority to detain Thomas for the littering violation. We disagree with opposing counsel that abandonment is a requirement of littering. That's nowhere in the statute. As soon as the act of throwing away or discarding the trash, leaving the trash on the ground, putting the trash on the ground, that was sufficient to constitute a littering violation. So there was an authority to detain, as well as there was further reasonable suspicion developed based on the fraudulent driver's license. And we believe that on those grounds... It's not entirely clear to me there was ever a detention before he asked him to step out of the car. Yes, Your Honor. Yes, Your Honor. And the government agrees with that position. We also support the district court's conclusion that there was authority to detain and reasonable suspicion further developed. If there are no further questions, I will yield my time. Okay. Thank you, Ms. Acosta. Thank you. Ms. Salant, you've saved some time for rebuttal. Thank you. I just want to clarify. When I cited to the idea that Officer Kaiser might have kept Mr. Thomas' identification during the duration of the stop, I was just citing one factor that this court can consider when deciding whether or not there was a detention. Although that was not an argument that we raised below, it is one of many factors that the court can rely on. And we don't... You know, I think that based on the district court's finding... One of the things you've said this morning is that, you know, you should have gotten an evidentiary hearing. Sure. But you never even suggested that that was in dispute in the district court for an evidentiary hearing.  That was not one of the factors that was cited. Because Mr. Thomas, below, argued that there was no reasonable... That once the reasonable suspicion of the littering violation dissipated, that the stop should have ended. And also, I'd like to... If it was a stop. If it was... Well, sure. If it was a stop, yes. I mean, your client was parked in a parking lot. There had been a littering complaint. Officer approaches him about that. He picks up the trash. And then the officer asks him for ID. Which an officer can do. Plainly. Can ask someone for an ID. A driver of a vehicle in a parking lot, right?  Right. And he produces a fake one. Correct. But that wasn't evident to the officer until later. It would have been evident, right? It's a 1947 birthdate on a license. Where the man photographed was born in the 80s. And I believe he said that to the dispatcher. That's one of the conversations he was having with the dispatcher. Not until he... He doesn't look like a 70-year-old to me. Right. That was later on when they were discussing the birthdate and the name and the picture. Here's the thing about probable cause. Probable cause is an object of inquiry, right? Of course. So it doesn't even matter whether he yet suspected it. What matters is knowing the appearance of your client. And the photograph. And his actual birthdate. And the birthdate that's on the face of the license plate. Objectively, a reasonable officer could have probable cause to believe that he is looking at an obviously fake ID. Right? I think that if the officer had taken note of all of that information from the get-go, yes. But we don't know that the officer did. The officer didn't call in the date of birth. All the officer did was call in the number on the license. That seems to me to be more of a subjective inquiry that you're concerned about. It's what the officer's mental operations are. As opposed to the facts that we objectively know.  That would lead a reasonable officer to believe that he has probable cause that this is a fake ID. Okay. Well, then I would ask the court to come back to Mr. Thomas' original argument. That there wasn't even a reason to ask for his identification. Although the Florida statute on littering does not require abandonment, I think both of the state cases regarding littering cited by the government involve abandonment. And I also think it's not unreasonable... You can... He could just... I mean, I thought you would agree with me just a moment ago. An officer can ask a driver sitting in a car, Hey, can I see your ID? He can. But under Florida law, it's not... If the detention is not legal, then giving a fake ID is not illegal. And because we don't believe... We don't believe that he had legal... This isn't a question about Florida law, I thought. I thought this was about the Fourth Amendment. Well, it is, but under Florida... I don't see what Florida law has to do with it. The officer can ask an individual, Can I see your ID? Sure. And that's not a violation of the Fourth Amendment, right? That's correct. But, that's correct. We would ask that the court reverse, if nothing else, for an evidentiary hearing on the detention issue, because we don't think that the facts are developed enough to make a finding here. Thank you. Thank you.